# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF OHIO
# WESTERN DIVISION AT DAYTON

LINDA L. SODEN,  :

                    Plaintiff,

  -vs-

MICHAEL J. ASTRUE,
COMMISSIONER OF
SOCIAL SECURITY,
                    Defendant.  :

Case No. 3:08-cv-320

District Judge Walter Herbert Rice
Magistrate Judge Michael R. Merz

## REPORT AND RECOMMENDATIONS

Plaintiff brought this action pursuant to 42 U.S.C. §405(g) for judicial review of the final decision of Defendant Commissioner of Social Security (the "Commissioner") denying Plaintiff's application for Social Security benefits. The case is now before the Court for decision after briefing by the parties directed to the record as a whole.

Judicial review of the Commissioner's decision is limited in scope by the statute which permits judicial review, 42 U.S.C. §405(g). The Court's sole function is to determine whether the record as a whole contains substantial evidence to support the Commissioner's decision. The Commissioner's findings must be affirmed if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *citing, Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *Landsaw v. Secretary of Health and Human Services*, 803 F.2d 211, 213 (6th Cir. 1986). Substantial evidence

is more than a mere scintilla, but only so much as would be required to prevent a directed verdict (now judgment as a matter of law), against the Commissioner if this case were being tried to a jury. *Foster v. Bowen*, 853 F.2d 483, 486 (6th Cir. 1988); *NLRB v. Columbian Enameling & Stamping Co.*, 306 U.S. 292, 300 (1939).

In deciding whether the Commissioner's findings are supported by substantial evidence, the Court must consider the record as a whole. *Hepner v. Mathews*, 574 F.2d 359 (6th Cir. 1978); *Houston v. Secretary of Health and Human Services*, 736 F.2d 365 (6th Cir. 1984); *Garner v. Heckler*, 745 F.2d 383 (6th Cir. 1984). However, the Court may not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility. *Garner, supra.* If the Commissioner's decision is supported by substantial evidence, it must be affirmed even if the Court as a trier of fact would have arrived at a different conclusion. *Elkins v. Secretary of Health and Human Services*, 658 F.2d 437, 439 (6th Cir. 1981).

To qualify for disability insurance benefits (SSD), a claimant must meet certain insured status requirements, be under age sixty-five, file an application for such benefits, and be under a disability as defined in the Social Security Act, 42 U.S.C. § 423. To establish disability, a claimant must prove that he or she suffers from a medically determinable physical or mental impairment that can be expected to result in death or has lasted or can be expected to last for a continuous period of not less than twelve months. 42 U.S.C. § 423(d)(1)(A). Secondly, these impairments must render the claimant unable to engage in the claimant's previous work or in any other substantial gainful employment which exists in the national economy. 42 U.S.C. §423(d)(2).

The Commissioner has established a sequential evaluation process for disability determinations. 20 C.F.R. §404.1520. First, if the claimant is currently engaged in substantial

gainful activity, the claimant is found not disabled. Second, if the claimant is not presently engaged in substantial gainful activity, the Commissioner determines if the claimant has a severe impairment or impairments; if not, the claimant is found not disabled. Third, if the claimant has a severe impairment, it is compared with the Listing of Impairments, 20 C.F.R. Subpart P, Appendix 1. If the impairment is listed or is medically equivalent to a listed impairment, the claimant is found disabled and benefits are awarded. 20 C.F.R. §404.1520(d). Fourth, if the claimant's impairments do not meet or equal a listed impairment, the Commissioner determines if the impairments prevent the claimant from returning to his regular previous employment; if not, the claimant is found not disabled. Fifth, if the claimant is unable to return to his regular previous employment, he has established a *prima facie* case of disability and the burden of proof shifts to the Commissioner to show that there is work which exists in significant numbers in the national economy which the claimant can perform. *Bowen v. Yuckert,* 482 U.S. 137, 145, n.5 (1987).

Plaintiff filed an application for SSD on September 3, 2004, alleging disability from December 5, 2002, due to fibromyalgia, arthritis, pain, and fatigue. (Tr. 63-71; 73, 83). Plaintiff's application was denied initially and on reconsideration. (Tr. 29-30, 40-47). A hearing was held before Administrative Law Judge Melvin A. Padilla, (Tr. 306-34), who determined that Plaintiff is not disabled. (Tr. 14-24). The Appeals Council denied Plaintiff's request for review, (Tr. 4-6), and Judge Padilla's decision became the Commissioner's final decision.

In determining that Plaintiff is not disabled, Judge Padilla found that Plaintiff met the insured status requirements of the Act through December 31, 2008. (Tr. 18, ¶ 1). Judge Padilla also found that Plaintiff has severe residuals of surgery on the right shoulder, chronic complaints of generalized arthralgias, and obesity, but that she does not have an impairment or combination of

impairments that meet or equals the Listings. *Id.*, ¶ 3, Tr. 21 ¶ 4. Judge Padilla found further that Plaintiff has the residual functional capacity to perform a limited range of light work. *Id.,* ¶ 5. He then found that Plaintiff is able to perform her past relevant work as an office manager. (Tr. 23, ¶ 6). Judge Padilla concluded that Plaintiff is not disabled and therefore not entitled to benefits under the Act. (Tr. 24, ¶ 7).

Plaintiff began receiving treatment from her primary care physician, Dr. Hanshaw, in December, 2000, and received treatment from him through at least February, 2007. (Tr. 255-297; 302-05). Plaintiff's treatment focused on her complaints of muscle and joint pain, fatigue, nervousness, stress, body aching, restless leg, sleeping difficulty and burning in her feet. *Id.*

On August 11, 1002, Plaintiff sought emergency room treatment for complaints of right shoulder pain . (Tr. 172-78). Plaintiff's diagnosis was identified as right shoulder strain and she was treated with medication. *Id*.

On December 5, 2002, Plaintiff underwent arthroscopic surgery with a subacromial decompression and repair of a rotator cuff injury of the right shoulder which Dr. Saunders performed. (Tr. 183-85). In March, 2003, Dr. Saunders noted that Plaintiff had improved, and he released Plaintiff to return to work with a recommendation for light duty, not lifting more than five pounds with the right upper extremity, and no overhead activities. (Tr. 191).

On February 7, 2003, Dr. Hanshaw reported that Plaintiff complained that her muscles were still aching and of constant fatigue; he identified her diagnosis as fibromyalgia. (Tr. 284). On April 8, 2003, Dr. Hanshaw noted Plaintiff had no energy and he determined that she was having a fibromyalgia flare-up. (Tr. 282). On May 9, 2003, Dr. Hanshaw reported that Plaintiff complained of on-going extreme fatigue and tingling and he noted that his examination of Plaintiff

4

revealed joint edema, and a dull ache in the neck, shoulder, and arms. *Id*. Dr. Hanshaw noted on July 20, 2004, that Plaintiff reported that her fibromyalgia was flaring over the past seven to eight weeks, that her upper legs ached constantly, her toes were numb, and that her shoulder blades, upper back, and hips were constantly aching. (Tr. 276).

Examining physician Dr. Danopulos reported on February 10, 2005, that Plaintiff moved about the examining room freely, dressed and undressed normally, and that her remaining movements were normal. (Tr. 216-24). Dr. Danopulos also reported that Plaintiff was a reliable historian, her intelligence appeared to be commensurate with her education, her right shoulder had painful, though normal motions, all of her muscles were painful on palpitation, her joints were not swollen, warm, or red, ranges of motion and straight leg raising tests were normal, and her gait was normal without ambulatory aids. *Id.* Dr. Danopulos noted that the objective findings were history of fibromyalgia with myalgias all over her muscles, right shoulder arthralgias, well-controlled blood pressure, unusual morbid obesity, and tiredness triggered from her unusual morbid obesity. *Id.* Dr. Danopulos opined that Plaintiff's ability to do any work-related activities was affected in a negative way from her unusual morbid obesity which did not allow her to work constantly due to easy tiredness. *Id.* Dr. Danopulos further opined that Plaintiff's obesity was "the source of her aches and pains." *Id*.

Examining Psychologist, Dr. Bonds reported on February 11, 2005, that Plaintiff had no past treatment by a mental health professional. (Tr. 225–32). Dr. Bonds also reported that Plaintiff's mood was normal, her affect was broad, she did not display any overt signs of anxiety, and that she was alert and oriented. *Id.* Dr. Bonds noted that Plaintiff was cooperative, her interest and motivation were fair, she was overly concerned with failure and was defensive and upset by her

mistakes, and that she constantly talked about her physical aches and pains. *Id.* Dr. Bonds also noted that Plaintiff's verbal IQ was 107, her performance IQ was 100, and her full scale IQ was 104 placing her in the average range. *Id*. Dr. Bonds opined that Plaintiff had no mental health related diagnoses, her GAF was 70, that her abilities to relate with others and understand, remember, and follow instructions were not significantly impaired, her ability to maintain attention and concentration to perform simple repetitive tasks was not impaired, and that her ability to withstand the stress and pressure associated with day to day work activity was not significantly impaired. *Id.*

Dr. Hanshaw reported on April 19, 2005, that Plaintiff had been his patient for "quite some time", and that due to fibromyalgia, arthritis, peripheral neuropathy, and related symptoms, she was unable to pursue gainful employment. (Tr. 266).

On June 28, 2005, Dr. Hanshaw reported that Plaintiff's diagnoses were fibromyalgia, sleep difficulty, and morbid obesity, that she had a history of widespread pain that had been present for at least three months, she exhibited pain on palpitation in at least eleven of eighteen tender points which was compatible with a diagnosis of fibromyalgia, she had morning stiffness and/or stiffness after sitting for a short period, her sleep was affected, and that she suffered from fatigue that was of sufficient severity and persistence to interfere significantly with a full-time workday. (Tr. 267).

Dr. Hanshaw reported in June, 2007, that Plaintiff was able to sit two hours a day, stand/walk less than one hour a day, had to alternate positions throughout the day, was limited in her ability to push and pull, was not limited with respect to grasping or fine manipulation, and that she could not use her hands or feet for repetitive tasks such as writing and typing. (Tr. 298-301). Dr. Hanshaw also reported that Plaintiff was able to occasionally lift 0-5 pounds, but that she could never lift over 6 pounds, could never climb, balance, stoop, kneel crouch or crawl, was able to

occasionally reach above shoulder level, and that she could not work around unprotected heights, or machinery. (Tr. 298-301). Dr. Hanshaw opined that Plaintiff's pain was limiting her from working in any full time position, even at the sedentary level. *Id.*

In her Statement of Errors, Plaintiff argues that the Commissioner erred essentially by failing to give the proper evidentiary weight to Dr. Hanshaw's opinion, by failing to find that she was entirely credible, and by relying on the VE's testimony because it was in response to an improper hypothetical question. (Tr. 10).

In support of her first Error, Plaintiff essentially argues that the Commissioner erred by rejecting Dr. Hanshaw' opinion that she is disabled. Plaintiff's position seems to be that Dr. Hanshaw is her treating physician and as such his opinion is entitled to complete deference.

In general, the opinions of treating physicians are entitled to controlling weight. *Cruse v. Commissioner of Social Security*, 502 F.3d 532, 540 (6th Cir. 2007), *citing, Walters v. Commissioner of Social Security*, 127 F.3d 525, 529-30 (6th Cir. 1997) (citing 20 C.F.R. § 404.1527(d)(2) (1997)). In other words, greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 242, (6th Cir. 2007), citing *Wilson v. Commissioner of Social Security,* 378 F.3d 541, 544 (6th Cir. 2004). "A physician qualifies as a treating source if the claimant sees her 'with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for [the] medical condition.'" *Cruse,* 502 F.3d at 540 (alteration in original) (quoting 20 C.F.R. § 404.1502). However, a treating physician's statement that a claimant is disabled is of course not determinative of the ultimate issue. *Landsaw v. Secretary of Health and Human Services,* 803 F.2d 211, 213 (6th Cir. 1986). A treating physician's opinion is to be given

7

controlling weight if it is well supported by medically acceptable clinical and laboratory techniques and it is not inconsistent with the other substantial evidence in the record. *Cutlip v. Secretary of Health and Human Services,* 25 F.3d 284 (6th Cir. 1994).

While it is true that a treating physician's opinion is to be given greater weight than that of either a one-time examining physician or a non-examining medical advisor, that is only appropriate if the treating physician supplies sufficient medical data to substantiate that opinion. *See, Kirk v. Secretary of Health and Human Services,* 667 F.2d 524 (6th Cir. 1981), *cert. denied,* 461 U.S. 957 (1983); *see also, Bogle v. Sullivan,* 998 F.2d 342 (6th Cir. 1993). A treating physician's broad conclusory formulations regarding the ultimate issue of disability, which must be decided by the Commissioner, are not determinative of the question of whether an individual is under a disability. *Id.* Further, the Commissioner may properly reject a treating physician's opinion if it is not supported by sufficient medical data or if it is inconsistent with the other evidence of record. *Cf., Kirk, supra; see also, Walters, supra.*

In rejecting Dr. Hanshaw's opinion that Plaintiff is disabled, Judge Padilla essentially determined that his opinion was not supported by the objective medical evidence and was inconsistent with other evidence of record.

As noted above, Dr. Hanshaw has been treating Plaintiff since 2000, and in June, 2005, and again in June, 2007, opined that Plaintiff is totally disabled. However, in offering those opinions, Dr. Hanshaw provided few, if any, objective clinical findings to support them. In June, 2005, Dr. Hanshaw referred to Plaintiff's having at least eleven of eighteen tender points which was compatible with a diagnosis of fibromyalgia. However, that reference to trigger points was by way of a check mark in response to a question presented in a pre-prepared form which contained

questions apparently meant to focus on complaints commonly associated with fibromyalgia. *See,* Tr. 267. Similarly, in June, 2007, when he again opined that Plaintiff is disabled, Dr. Hanshaw provided no positive clinical findings but rather completed a form using check marks. In addition, a review of Dr. Hanshaw's clinical notes reveals that they also contain few, if any, positive objective findings. Rather, they consist primarily of Plaintiff's subjective complaints.

In contrast, examining physician Dr. Danopulos specifically noted that Plaintiff had a normal physical examination and documented no positive clinical findings. While Dr. Danopulos noted that all of Plaintiff's muscles were painful on palpation, that, of course, is a findings based on Plaintiff's subjective response to the examination. Additionally, Dr. Hanshaw's opinion is inconsistent with the reviewing physician's opinions that Plaintiff is capable of performing a range of light work. (Tr. 247-54).

The Sixth Circuit has recognized that fibromyalgia can be a severe impairment and that, unlike medical conditions that can be confirmed by objective testing, fibromyalgia patients present no objectively alarming signs. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 243, (6th Cir. 2007), citing *Preston v. Secretary of Health & Human Services,* 854 F.2d 815, 820 (6th Cir. 1988)(per curiam). Fibromyalgia patients manifest normal muscle strength and neurological reactions and have a full range of motion. *Rogers, supra.* The process of diagnosing fibromyalgia includes (1) the testing of a series of focal points for tenderness and (2) the ruling out of other possible conditions through objective medical and clinical trials. *Id.* (citation omitted). However, in the present case, as noted above, Dr. Hanshaw's clinical notes contain few, if any, references to the presence of trigger points and Dr. Hanshaw's reference to those clinical findings in conjunction with his June, 2005, opinion was in response to a check-list inquiry. In addition, the record contains

absolutely no evidence that Dr. Hanshaw even attempted to rule out other possible conditions through medical and clinical trials. Indeed, although Dr. Hanshaw has treated Plaintiff since 2000, it was not until February, 2007, that Dr. Hanshaw considered referring Plaintiff to a rheumatologist "for fibromyalgia and possible use of meds." (Tr. 302).

Under these facts, the Commissioner had an adequate basis for rejecting Dr. Hanshaw's opinion that Plaintiff is disabled.

Plaintiff also argues that the Commissioner erred by failing to find that her alleged fibromyalgia is a severe impairment.

An impairment can be considered as not severe only if the impairment is a "slight abnormality" which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, and work experience. *Farris v. Secretary of Health and Human Services,* 773 F.2d 85, 90 (6th Cir. 1985)(citation omitted); *see also, Bowen v. Yuckert,* 482 U.S. 137 (1987).

An ALJ does not commit reversible error in finding a non-severe impairment where the ALJ determines that a claimant has at least one other severe impairment and then goes on with the remaining steps in the disability evaluation, since the ALJ considers all impairments, including non-severe impairments, in determining residual functional capacity to perform work activities. *See, Maziarz v. Secretary of Health and Human Services,* 837 F.2d 240, 244 (6th Cir. 1987).

As noted above, Judge Padilla found at the second step of the sequential evaluation process that Plaintiff has severe impairments including residuals of shoulder surgery, generalized arthralgias, and obesity. Judge Padilla then went on with the process and determined at step four that in spite of her limitations due to her impairments, Plaintiff is able to perform her past relevant

10

work as an office manager. Because the Commissioner determined that Plaintiff has at least one other severe impairment and then went on with the remaining steps in the disability evaluation, he did not commit reversible error by failing to find that her alleged fibromyalgia is a severe impairment.

Plaintiff argues next that the Commissioner erred by failing to find that she was entirely credible.

In many disability cases, the cause of the disability is not necessarily the underlying condition itself, but rather the symptoms associated with the condition. *Rogers v. Commissioner of Social Security,* 486 F.3d 234, 247, (6th Cir. 2007). Where the symptoms and not the underlying condition form the basis of the disability claim, a two-part analysis is used in evaluating complaints of disabling pain. *Rogers, supra* (citations omitted). First, the ALJ will ask whether there is an underlying medically determinable physical impairment that could reasonably be expected to produce the claimant's symptoms. *Id.* (citation omitted). Second, if the ALJ finds that such an impairment exists, then he must evaluate the intensity, persistence, and limiting effects of the symptoms on the individual's ability to do basic work activities, *Id.* Stated differently, there is a two-step process for evaluating pain. First, the individual must establish a medically determinable impairment which could reasonably be expected to produce the pain. *See, Jones v. Secretary of Health and Human Services,* 945 F.2d 1365 (6th Cir. 1991), *citing, Duncan v. Secretary of Health and Human Services,* 801 F.2d 847 (6th Cir. 1986). Second, the intensity and persistence of the alleged pain are evaluated by considering all of the relevant evidence. *See, Jones,* 945 F.2d at 1366-70.

For the same reasons that the Commissioner did not err by rejecting Dr. Hanshaw's

opinion, specifically the lack of objective clinical findings to support that opinion or Plaintiff's subjective complaints, the Commissioner did not err by finding that Plaintiff was not entirely credible.

Finally, Plaintiff argues that the Commissioner erred by relying on the VE's testimony because it was in response to an improper hypothetical question. Presumably, Plaintiff's position is that the hypothetical question that Judge Padilla presented to the VE did not include the extreme limitations which Dr. Hanshaw described.

A hypothetical question must accurately portray the claimant's physical and mental impairments. *Varley v. Secretary of Health and Human Services*, 820 F.2d 777, 779 (6th Cir. 1987). If a hypothetical question has support in the record, it need not reflect the claimant's unsubstantiated complaints. *Blacha v. Secretary of Health and Human Services*, 927 F.2d 228, 231 (6th Cir. 1990); *see also, Stanley v. Secretary of Health and Human Services,* 39 F.3d 115, 118 (6th Cir. 1994). A hypothetical question need only include those limitations accepted as credible by the ALJ. *Casey v. Secretary of Health and Human Services,* 987 F.2d 1230, 1235 (6th Cir. 1993). A vocational expert's response to a hypothetical question that accurately portrays an individual's impairments constitutes substantial evidence for determining whether a disability exists. *Varley*, 820 F.2d at 779-80.

Because the Commissioner had an adequate basis for rejecting Dr. Hanshaw's opinion, he was not required to include in the hypothetical question to the VE the limitations Dr. Hanshaw described. Therefore, the Commissioner did not err in that regard.

Our duty on appeal is not to re-weigh the evidence, but to determine whether the decision below is supported by substantial evidence. *See, Raisor v. Schweiker,* 540 F.Supp. 686

(S.D.Ohio 1982). The evidence "must do more than create a suspicion of the existence of the fact to be established. ... [I]t must be enough to justify, if the trial were to a jury, a refusal to direct a verdict when the conclusion sought to be drawn from it is one of fact for the jury." *LeMaster v. Secretary of Health and Human Services,* 802 F.2d 839, 840 (6th Cir. 1986), *quoting, NLRB v. Columbian Enameling & Stamping Co.,* 306 U.S. 292, 300 (1939). The Commissioner's decision in this case is supported by such evidence.

It is therefore recommended that the Commissioner's decision that Plaintiff was not disabled and therefore not entitled to benefits under the Act be affirmed.

May 1, 2009.

*s/ Michael R. Merz*
United States Magistrate Judge

## NOTICE REGARDING OBJECTIONS

Pursuant to Fed.R.Civ.P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within ten days after being served with this Report and Recommendations. Pursuant to Fed.R.Civ.P. 6(e), this period is automatically extended to thirteen days (excluding intervening Saturdays, Sundays, and legal holidays) because this Report is being served by one of the methods of service listed in Fed.R.Civ.P. 5(b)(2)(B), (C), or (D) and may be extended further by the Court on timely motion for an extension. Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum in support of the objections. If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs. A party may respond to another party's objections within ten days after being served with a copy thereof. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See, United States v. Walters,* 638 F.2d 947 (6th Cir. 1981); *Thomas v. Arn,* 474 U.S. 140, 106 S.Ct. 466, 88 L.Ed.2d 435 (1985).